IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Stanley Linder, | ) | C/A No.: 1:16-754-RMG-SVH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | REPORT AND RECOMMENDATION |
| Maverick Wilson, Angelena Brown, and Sgt. Thomas, | ) ) ) | |
| Defendants. | ) ) | |

Stanley Linder ("Plaintiff"), proceeding pro se and in forma pauperis, brought this action alleging violations of his constitutional rights during his incarceration at Wateree Correctional Institution ("WCI") while in the custody of the South Carolina Department of Corrections ("SCDC"). Plaintiff asserts claims against current and former WCI employees Maverick Wilson, Angelena Brown, and Sgt. Thomas ("Defendants").[1]

This matter comes before the court on Defendants' motion for summary judgment. [ECF No. 34]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 35, 48]. Despite numerous extensions and the undersigned's warning that no further extensions will be granted, Plaintiff has failed to file a substantive response.

---

[1] The court previously granted the motion to dismiss of Tonya James. [ECF No. 30-2].

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

I. Background

A. Factual Background

In his complaint, Plaintiff alleges that Wilson, the former WCI mailroom attendant, opened legal mail he received from the United States Supreme Court, placed contraband in the envelope, and then charged Plaintiff with smuggling contraband. [ECF No. 1 at 3]. Plaintiff alleges Wilson violated federal and state law in opening and tampering with his legal mail. *Id*. Plaintiff alleges disciplinary hearing officer Brown sanctioned him to 90 days in the Special Housing Unit ("SHU") and 90 days' loss of telephone and canteen privileges on October 30, 2015.[2] *Id*.; ECF No. 51-1 at 15. Plaintiff alleges that James "backed" Wilson and alleges James was "associated with fabricating this charge." *Id*.

On October 30, 2015, Plaintiff submitted a grievance that alleged Wilson brought

---

[2] In an affidavit attached to his motion to amend the complaint, Plaintiff states that he lost good time credits. [ECF No. 39-2]. However, this is not substantiated by the record or by a review of Plaintiff's detail report, which provides a projected release date of July 23, 2017, and does not list any sanctions for the October 2015 incident. *See* https://public.doc.state.sc.us/scdc-public/ (last visited May 24, 2017). A court may take judicial notice of factual information located in postings on government websites. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (court may "properly take judicial notice of matters of public record").

his legal mail to his ward to open it[3] and then shook the mail until some brown paper substance fell out. [ECF No. 51-1 at 15]. Plaintiff further stated that Wilson kept the mail for four days before charging him with smuggling contraband. *Id*. Plaintiff states that inthe disciplinary hearing, the coordinator admitted that no one knew who sent the contraband. *Id*. Plaintiff also claims he was set up by Wilson and Brown and that his legal mail had been "preopened" before it reached him. *Id*. On December 14, 2015, the warden overturned Plaintiff's conviction, but stated that "[a]ll sanctions will be reinstated."[4] *Id*. at 16.

  B.  Procedural Background

Defendants filed their motion for summary judgment on October 19, 2016. [ECF No. 34]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 35]. On November 10, 2016, Plaintiff advised Defendants and the court that he had not received Defendant's motion. [ECF No. 37]. Defendants filed a reply indicating that it appeared Plaintiff had been transferred to Allendale Correctional Institution, but had failed to advise the court or Defendants of his change of address. [ECF No. 38].[5]

---

[3] Also in the affidavit attached to his motion to amend the complaint, Plaintiff states that Wilson improperly brought his legal mail to him with inmates' general mail, and upon Plaintiff having signed for his mail, Wilson opened it outside of his view and out of his sight. [ECF No. 39-2 at ¶¶ 4, 5, 11].

[4] It is unclear whether Plaintiff's sanctions were reinstated, and if so, why his sanctions were not overturned with his conviction.

[5] Plaintiff also alleged that he had filed a motion for summary judgment in July 2016, but the court has no record of the motion.

Over three months after the deadline to amend the pleadings, on December 5, 2016, Plaintiff filed a motion to amend his complaint, which requested the court remand the case to state court. [ECF No. 39]. Defendants opposed the motion as an improper attempt to divest the court of jurisdiction. [ECF No. 40]. On February 28, 2017, the court directed the Clerk of Court to mail Plaintiff a copy of Defendants' motion for summary judgment, as he claimed he had not received it and had not filed a substantive response. [ECF No. 46]. The court also issued another *Roseboro* order, warning Plaintiff of the possible consequences if he failed to respond to Defendants' motion. [ECF No. 48]. On March 16, 2017, Plaintiff filed an "objection" to Defendants' motion, alleging that he had served Defendants with discovery requests on December 21, 2016, and had not received responses. [ECF No. 50]. On March 20, 2017, Defendants filed a reply attaching responses to the discovery requests. [ECF No. 51]. The following day, the undersigned issued an order noting that the deadline to complete discovery had expired on October 3, 2016, but nevertheless permitting Plaintiff until April 4, 2017, to file a substantive response to Defendants' motion for summary judgment. [ECF No. 52]. On April 14, 2017, the undersigned granted Plaintiff's motion for an extension of time until May 15, 2017 to file a response, but warned Plaintiff that no further extensions would be granted. [ECF No. 56]. Plaintiff has failed to file a substantive response to Defendants' motion.

II. Discussion

    A. Failure to Prosecute

Notwithstanding the specific warning and instructions set forth in the court's *Roseboro* orders, Plaintiff has failed to properly respond to Defendants' motion for

summary judgment that was filed on October 19, 2016. On April 14, 2017, the court granted Plaintiff an extension until May 15, 2017, to file a response but advised that no further extensions would be granted. [ECF No. 56].

Plaintiff has filed no response. As such, it appears to the court that he does not oppose the motion and wishes to abandon this action. Based on the foregoing, the undersigned recommends this action be dismissed with prejudice for failure to prosecute. *See Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978); Fed. R. Civ. P. 41(b).

Out of an abundance of caution, the undersigned also addresses the motion on the merits.

B.  Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C. Analysis

1. Opening of Legal Mail

Generally, a prisoner enjoys a First Amendment right to receive and send mail, but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401,

408 (1989) (citation omitted). The mere opening of an inmate's incoming personal mail in his absence does not raise a claim of constitutional magnitude. *Kershaw v. Padula*, 2011 WL 1750222, *5 (D.S.C. April 6, 2011) (citing *Sterling-Earl v. Gray*, 2006 WL 1318367, at 6–7 (W.D. Va. 2006)). However, different standards apply regarding the inspection of personal versus legal mail. *Altizer v. Deeds*, 191 F.3d 540, 548–49 (4th Cir. 1999). In *Altizer*, the court noted in a footnote that "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id*. at 549, n. 14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). However, Plaintiff alleges the legal mail at issue was from the Supreme Court of the United States, and he provides no basis for claiming the mail was confidential. To establish that his rights have been violated by Defendants' opening his incoming legal mail, Plaintiff must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. *Griffin v. Virginia*, 2002 WL 32591574 *3 (W.D. Va. 2002) (unpublished) (citing *Lewis v. Casey*, 518 U.S. 343 (1996). Plaintiff has not shown he was prejudiced, and therefore has not stated a claim with regard to the alleged improper opening of his mail.

    2.    Sanctions

Plaintiff has not shown that Defendants have violated his due process rights simply because he was housed in the SHU. Although the Fifth Amendment to the Constitution prohibits the taking of one's liberty without due process, a prisoner's liberty interest is "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Accordingly, the Fourth Circuit has found that prisoners' six-month confinement in administrative segregation does not constitute an "atypical and significant hardship" necessary to confer a liberty interest upon a prisoner, despite allegations that (1) the prisoners were afforded no outside recreation and no educational or religious services and (2) the cells were invested with vermin, smeared with human feces, flooded with water from a broken toilet and considerably hotter than cells in the general population. *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997). Similarly, a court in this district has held that an inmate's placement in the SHU for security reasons without a hearing did not violate the inmate's constitutional rights. *Ajaj v. United States*, 479 F. Supp. 2d 501, 543–44 (D.S.C. 2007) (citing *Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994) (holding the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed)). Therefore, Plaintiff has not shown that the sanctions imposed after his disciplinary hearing violated his constitutional rights.

    4.    Plaintiff's Allegation that Wilson Planted the Contraband

The undersigned would be remiss in failing to address Plaintiff's claim that Wilson planted the contraband in the envelope. Plaintiff provides no basis for his allegation that Wilson placed the contraband in the envelope herself. Although Plaintiff submitted a verified complaint,[6] affidavits must be made on personal knowledge and set

---

[6] In this Circuit, verified complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge.

8

out facts that would be admissible in evidence to be considered. *See* Fed. R. Civ. P. 56(c)(4); *Larken v. Perkins*, 22 F. App'x 114, 115 n. * (4th Cir. 2001) (noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, [is] insufficient to stave off summary judgment"). Although Plaintiff alleges the envelope was "preopened," he provides no basis for the allegation that Wilson opened the envelope before opening it in his presence. Therefore, Plaintiff's speculative allegations, without more, are insufficient to defeat Defendants' summary judgment motion.

  5. Eleventh Amendment Immunity

Defendants argue that, to the extent Plaintiff sues them for monetary damages in their official capacities, they are immune from suit. [ECF No. 58-1 at 2–3]. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.,* 242 F.3d 219, 222 (4th Cir. 2001). When acting in their official capacities, Defendants are arms of the state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (stating that "when the action is in essence one for the recovery of money

---

*Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

9

from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual officials are nominal defendants"). Therefore, to the extent they are sued for monetary damages in their official capacities, Defendants are entitled to Eleventh Amendment immunity.

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the district judge grant Defendants' motion for summary judgment [ECF No. 34] as to all federal claims and decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367(c), as it appears Plaintiff prefers to adjudicate those claims in state court. The undersigned also recommends Plaintiff's motion to amend [ECF No. 39] be denied as untimely in this court, as Plaintiff may file a new complaint in state court pursuant to 28 U.S.C. § 1367(d).

IT IS SO RECOMMENDED.

May 26, 2017  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).